**CONTINUATION**

I, Adam Rogers, being first duly sworn under oath, state the following to be true to the best of my knowledge, information, and belief:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with the United States Secret Service ("USSS") and have been so employed since October 2013. As part of my duties, I am assigned to the Grand Rapids Resident Office, with an assigned territory of the Western District of Michigan, including the City of Spring Lake. My responsibilities include investigations of threats against the President and successors to the Presidency, as well as members of the immediate family of the President. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the United States Secret Service's Special Agent Training Course where I received training in general and protective intelligence threat investigations.

2.  The facts in this Continuation come from my personal observations, my training and experience, information obtained from other agents and witnesses, and information retrieved via open source intelligence. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.  Based on my training and experience and the facts as set forth below, I submit there is probable cause to believe that on or about October 26, 2025, in Ottawa County, Aaron Michael David WACHTER ("WACHTER") violated 18 U.S.C. §§ 115

and 875(c). 18 U.S.C. § 115 makes it a felony to threaten to assault or murder a federal official with the intent to impede, intimidate or interfere with, or retaliate against, that official during or on account of the performance of the victim's official duties. 18 U.S.C. § 875(c) makes it a felony to knowingly transmit a communication in interstate commerce containing a threat to injure a person, for the purpose of making a threat, or knowing the communication would be viewed as a threat. I therefore request that the Court authorize a criminal complaint and arrest warrant.

## PROBABLE CAUSE

4. On October 23, 2025, the USSS Protective Intelligence Division Open-Source Branch found several threatening messages had been publicly posted on X by an individual with the screen name "King BingBong Of The Detracted (Pinocchio)" and the username "@A300PoundCat" (hereafter, "King BingBong"). In one message "King BingBong" wrote, "if u killed charlie im gonna kill u," followed by the usernames of President Donald J. Trump, his son Donald J. Trump Jr., Israeli prime minister Benjamin Netanyahu, and First Lady Melania Trump. I am aware that when a message on X includes the username of another X user, that person is notified through the app, and can read the message. In this case, the message apparently refers to the recent murder of political activist Charlie Kirk:



5.      In a second message the same day, "King BingBong" suggested he would commit sex acts on President Trump and Prime Minister Netanyahu and dump their bodies in the ocean. "King BingBong" again included the usernames for the President, his son, the First Lady, and the Prime Minister of Israel:



6.      Because the messages above included potential threats to USSS protectees, the Protective Intelligence Division Open-Source Branch conducted research to identify of the poster. Based on open-source and public records, the agency determined the "King BingBong" account was likely associated with WACHTER, a resident of Spring Lake, Michigan. Because Spring Lake is in Ottawa County, the lead was forwarded to the USSS Grand Rapids Resident Office for investigation.

7.      On October 24, 2025, Senior Special Agent David Dobb called (xxx) xxx-4043, a telephone number linked to WACHTER through public records. The person who answered the phone confirmed that he was Aaron Michael David WACHTER, and consented to a telephonic interview. SSA Dobb identified himself as an agent of the United States Secret Service and asked if he knew why the Secret Service would be calling him. WACHTER said he did, and admitted that he was the owner of the

"King BingBong" account. WACHTER further confirmed that he resided at an address known to USSS in Spring Lake with his 25 year old brother and parents. WACHTER said he did not want to meet agents in person because he had previously had negative interactions with law enforcement, including being "kidnapped" by police on multiple occasions.

8. SSA Dobb identified the X posts above, and asked WACHTER what he meant by them. WACHTER described himself as a Trump supporter who voted for him and attended a rally during the 2016 campaign. WACHTER said that if President Trump was behind Charlie Kirk's death, however, he should be "held accountable." WACHTER denied intending to kill anyone, and said he lacked weapons or other means to do so in any event. When asked if he actually thought President Trump was responsible for Kirk's death, WACHTER said he would need to "see more evidence from Candace Owens." I am aware that Candace Owens is an internet personality who opines on political news and events.

9. During the interview WACHTER alluded to Freemasonry and other conspiracy theories regarding Charlie Kirk's death. WACHTER claimed his own wife and child were "burned in front of him" because he had exposed pedophiles. He also said he had been tortured and raped by the Grand Haven Police Department. After hearing these claims and noting WACHTER laughed inappropriately at times in the conversation, SSA Dobb asked WACHTER if he had ever been diagnosed or treated for mental health issues. WACHTER said he had not.

10.     SSA Dobb next telephonically interviewed WACHTER's father, David Depung, during the same call. Depung said WACHTER did not have access to weapons, rarely left the house, and was "harmless." Depung denied WACHTER had any mental health issues, but suggested his behavior might be attributable to his use of marijuana and "THC pens."

11.     On October 26, 2025, two days after his interview with SSA Dobb, "King BingBong" posted another message to X. He wrote, "@SecretService if ur corrupt agent comes to my house again i will defend myself and my family," and said, "let me record footage of me leaving with you or i am 100% shooting myself or u before you can take me." He added, "and just so you can't snake me on a technicality i'm not threatening anyone except that corrupt secret service agent."



12.     SSA Dobb was engaged in his official duties when he interviewed WACHTER on October 24, 2005. Because SSA Dobb is the only USSS agent with

whom WACHTER interacted, he was the apparent target of WACHTER's threat. I also know that @SecretService is the actual username for the official X account of the USSS, and can conclude that by addressing his threat to that address, WACHTER intended it to be delivered to the agency.

13. I am also aware that even if a message is sent and received in the same state, submitting data on the internet necessarily means the data travels in interstate commerce. *See,* United States v. Elonis, 730 F.3d 321, 335 (3d Cir. 2013) (reversed on other grounds). In any event, WACHTER's message was public posted on X, meaning the message was transmitted to users in any state and/or foreign country where a follower resided. Because the list of addressees included both the USSS, the President, and various cabinet members, I know the message was transmitted at the very least from Michigan to Washington, D.C.

## CONCLUSION

14. Based on the forgoing, I submit that there is probable cause to believe that WACHTER violated 18 U.S.C. §§ 115 and 875(c). I therefore respectfully request that the Court issue a criminal complaint and an arrest warrant.